UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VELTON LAMONT BOONE,<br><br>Plaintiff,<br><br>v.<br><br>RAMIRO GOMEZ, et al.,<br><br>Defendants. | Case No. 21-cv-08160-JSW<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 32 |

## INTRODUCTION

Plaintiff is a California prisoner proceeding pro se. He filed this civil rights action under 42 U.S.C. § 1983 against six officials at California Training Facility ("CTF"). He has voluntarily dismissed his claims against one of them, D. Mulhern. The remaining Defendants have filed a motion for summary judgment. Plaintiff filed an opposition, and Defendants filed a reply brief. For the reasons discussed below, Defendants' motion is GRANTED.

## BACKGROUND

Plaintiff was at relevant times a prisoner at CTF. In September 2019, he obtained a job at CTF in a furniture factory overseen by the California Prison Industries Authority ("CALPIA"), which is a subdivision of the California Department of Corrections and Rehabilitation. Defendant Flores was a correctional counselor at CTF, and Defendants Micheli, Blades, Deditius, and Gomez worked for CALPIA.

Plaintiff had several medical conditions during the relevant time period: degenerative disc disease which caused him to use chair with lumbar support, a knee replacement, which caused him to walk with a cane, and arthritis in his shoulder, which limited him to lifting up to 19 pounds. In September 2019, Plaintiff began working in a position taping drawers, which required him to lift up to 25 pounds. Plaintiff had indicated on the work application form that he could handle the

requirements of the position. Shortly after starting the job, he requested an adjustable chair for lumbar support. He received it within five days. On November 6, 2019, Defendants Blades and Micheli replaced the chair with a stationary chair. They state that they believed the adjustable chair, which had wheels, would be unsafe for Plaintiff because of his mobility limitations. Plaintiff requested the adjustable chair be returned to him because the stationary chair was too low. On November 18, 2019, Defendants returned the adjustable chair. Plaintiff did not thereafter ask for a different chair while working in that position. Shortly thereafter, Micheli and Blades also replaced the chairs of other inmates; they deemed the chairs unsafe because they had factory defects.

In February and March 2020, Plaintiff also requested a lower work table. According to Defendants, one was made available to Plaintiff, and he took it to his work station. Plaintiff was not allowed to keep the lower table, however, because he created a safety hazard by placing the table in front of a fire hose box --- against the instructions of his superiors. Plaintiff denies ever having received a lower work-table.

On March 10, 2020, Blades gave Plaintiff a performance evaluation for the previous three months stating that Plaintiff's attitude towards staff, work quality and quantity, attendance, and relationship with others were below average. The same day, Micheli reassigned Plaintiff to a position in the tool room, a position that did not require lifting more than 19 pounds, the limit of Plaintiff's shoulder arthritis. The position gave him the same amount of pay, the same work hours, and the same opportunities for advancement as his drawer taping position. Plaintiff did not want to work in the tool room. Shortly thereafter, the factory was closed due to COVID restrictions, and it reopened in October 2020. Plaintiff did not report to work, and consequently Blades issued him a Rules Violation Report ("RVR"). Plaintiff disputes the validity of that RVR. Following a hearing, the RVR was dismissed as a misunderstanding.

## DISCUSSION

I.  **Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the

2

case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Ibid*.

Exhaustion must ordinarily be decided in a summary judgment motion. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. *Id*.

**II.     Analysis**

Plaintiff claims that Defendants violated his rights under the Americans with Disability Act ("ADA") by not accommodating his disabilities for his position as a drawer-taper. He also claims that they retaliated against him for requesting those accommodations by replacing transferring him to the tool room, replacing the chairs of other inmates and thereby creating a hostile work environment, giving him a poor performance evaluation, and issuing him a meritless Rules Violation Report.[1]

1.     Exhaustion

Defendants argue that Plaintiff has not administratively exhausted his claims. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail,

---

[1] In his opposition, Plaintiff for the first time claims that the temporary replacement of his adjustable chair and the denial of a chair were also retaliatory. These claims are not addressed because they were not made in the Complaint.

3

prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Compliance with the exhaustion requirement is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 739-40 & n.5 (2001).  The inmate must "properly" exhaust administrative remedies, moreover, to comply with the PLRA, which means the inmate must comply with the state's regulations and procedures concerning its administrative appeals process before filing suit.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).

The California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).[2]  It also provides its inmates the right to file administrative appeals alleging misconduct by correctional officers.  *Id*.  The applicable California regulations allows an inmate to submit a healthcare grievance to two levels of review, one at the institution and then an appeal to the headquarters.  15 Cal. Code Regs. § 3999.226(a)(1).

Under California's Code of Regulations, each issue that is appealed must be "addressed through all required levels of review . . ." Cal. Code Regs. tit. 15, § 3084.1(b); see Sapp v. Kimbrell, 623 F.3d 813, 818, 825 (9th Cir. 2010) (raising an issue for the first time at the second level of appeal does not exhaust the issue.)  The California Code of Regulations require an inmate to "list all staff members involved" and to "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3)(2018).

It is undisputed that Plaintiff did not file any grievances during the relevant time period that named Gomez or Deditius.  It is also undisputed that Plaintiff did not name Flores in any grievance related to his claims against her in this case.  His only asserted grievance against her (No. CTF-S-19-03456) concerned his request for chair with lumbar support.  His claims against

---

[2] The regulations regarding inmate health care appeals were renumbered, effective August 6, 2018. Former California Code of Regulations Title 15, Sections 3087.1 through 3087.12 were renumbered without substantive change and are now found at Sections 3999.226 through 3999.237 of the same title of the California Code of Regulations.

4

her in this case are that she "contributed" to the assertedly retaliatory removal of other inmates' chairs and issuance of an RVR against him; it is undisputed that filed no grievance asserting these claims in which he named Flores. Consequently, there is no triable issue of fact as to whether Plaintiff exhausted his administrative remedies on any of his claims against Gomez, Deditius, and Flores.

It is also undisputed that Plaintiff did not file any grievances regarding three of the instances of Defendants' alleged retaliation. Of the 28 administrative complaints Plaintiff filed during the relevant time period, four concerned the allegations in the complaint. Plaintiff does not dispute the evidence that none of these complaints assert that Defendants retaliated against him by replacing other inmates' chairs, giving him a bad performance evaluation, or issuing him a false Rules Violation Report. As there are no triable factual questions that, if resolved in Plaintiff's favor, would establish that he exhausted his administrative remedies on these three retaliation claims, Defendants are entitled to summary judgment on those claims on exhaustion grounds.

Plaintiff's assertion that other administrative appeals have not been granted does not establish that the administrative remedies were not available to him or otherwise excuse him from the exhaustion requirement. Exhaustion is mandatory and not left to the discretion of the district court. *Woodford*, 548 U.S. at 84 (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). Courts may not create their own "special circumstances" exceptions to the exhaustion requirement. *Ross v. Blake,* 578 US. 632, 638 (2016). The undisputed evidence establishes the California administrative appeal system was available to him, that he took advantage of it on many occasions, and that he obtained accommodations when he submitted requests. There are no grounds for excusing the PLRA's exhaustion requirement in this case.

Defendants are entitled to summary judgment on exhaustion grounds on all of Plaintiff's claims against Defendants Deditius[3], Gomez, and Flores, and his retaliation claims against Defendants Blades and Micheli based upon Plaintiff's performance review, his RVR, and the replacement of other inmates' chairs. The remaining claims are that Blades and Micheli violated

---

[3] The Court also finds that Plaintiff has failed to state a claim against Deditius.

5

Plaintiff's rights under the ADA by replacing his rolling chair with a stationary chair and failing to provide him a lower work-table, and that they retaliated against him by transferring him to a new position in the tool room.[4]  Those claims are addressed below.

### 2. ADA

Plaintiff claims that Defendants violated his rights under the ADA by replacing his rolling chair with a stationary chair and failing to provide him a lower work-table.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The elements of a cause of action under Title II are that:

> 1. the plaintiff is an individual with a disability;
> 2. the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;
> 3. the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and
> 4. such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).  To avoid discrimination:

> [a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7).  Moreover, monetary damages, which are the only form of relief Plaintiff seeks, with a showing that Defendants acted with deliberate indifference to Plaintiff's need for accommodations.  *See Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).  Deliberate indifference requires: (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood.  *Id.* at 1139.

There are no triable factual issues that, if resolved in Plaintiff's favor, show that Defendants were deliberately indifferent to Plaintiff's need for reasonable accommodations for a

---

[4] In light of the conclusion that Blades and Micheli are entitled to summary judgment on these claims based on grounds discussed below, the Court does not address their arguments that they are entitled to summary judgment on these claims on exhaustion grounds.

6

prison job. The first prong is satisfied when the plaintiff identifies a specific, reasonable and necessary accommodation that the entity has failed to provide, and the plaintiff notifies the public entity of the need for accommodation, or the need is obvious even if no request is made or required by statute or regulation. *Id.* The second prong is satisfied by showing that the entity deliberately failed to fulfill its duty to act in response to a request for accommodation. *Id.* at 1139-40. The entity's duty is to undertake a fact-specific investigation to gather from the disabled individual and qualified experts sufficient information to determine what constitutes a reasonable accommodation, giving "primary consideration" the requests of the disabled individual. *Id.* The second prong is not satisfied if the failure to fulfill this duty to accommodate is a result of mere negligence, such as "bureaucratic slippage" or where the entity simply "overlooked" a duty to act. *Id.*

      The undisputed evidence shows no instance in which Defendants knew that Plaintiff did not receive a reasonable accommodation to access the prison's job program. Initially, he indicated that he was physically capable of performing the job requirements of a drawer taper. When he indicated that his back injury prevented from doing it because of the chair provided, Defendants provided him a chair that could be adjusted for height within five days. Plaintiff argues that Defendants violated the ADA because they thereafter replaced that adjustable chair with a chair that was too low. The only evidence of Defendants' state of mind in replacing his chair is their evidence that they thought that the adjustable chair, which had wheels, could be unsafe for an inmate with mobility concerns like Plaintiff. In addition, the evidence that Defendants returned the adjustable chair to Plaintiff within days of his informing them that the replacement chair was too low indicates that they intended that he would have a chair that accommodated his disabilities. Similarly, the undisputed evidence that Defendants have allowed him to keep the adjustable chair, including at his subsequent position in the tool room, also indicates that Defendants did not knowingly deprive him of a chair that accommodated his disabilities. Plaintiff's argument that Defendants intended to deprive him of a suitable chair is purely speculative insofar as it is not supported by any evidence of such intent. Speculation is not sufficient to create a triable factual question.

There is similarly no triable question as to whether Defendants' failure to provide Plaintiff a lower table in his drawer-taper position violated the ADA.[5] Within a month of requesting the lower table, Defendants transferred him to another position in which he would not have to lift objects that were heavier than his arthritis allowed. The new position was a better accommodation for Plaintiff's disabilities than a lower table as a drawer-taper because even with a lower table, the position required Plaintiff to lift objects that weighed as much as 25 pounds --- six pounds over the 19-pound limit indicated by his arthritic shoulder. It is undisputed that the new position did not require him to lift more than 19 pounds. Plaintiff's preference for the drawer-taper position over the new position in the tool room does not mean the ADA required Defendants to ensure his access to the drawer-taper position. Plaintiff's claim rests on the faulty premise that the ADA required Defendants to ensure his access to a particular job position, as opposed to a position in the prison work program. As noted above, the ADA simply requires access to a "program," in this case the prison's work program. There is no evidence that new position was objectively worse; to the contrary the new position had the same pay, hours, and opportunities for advancement made it an even more reasonable accommodation. Plaintiff's subjective preference does not alter this conclusion. Moreover, in the new position, Plaintiff would not have to lift heavier objects than his physical condition safely allowed. No reasonable fact-finder could conclude that even if Defendants did not provide Plaintiff with a lower table in the drawer-taper position, as Plaintiff asserts, that their transfer of him to an equivalent, but more physically suitable, position in the tool room amounted to an unreasonable accommodation and was an intentional denial of access to the prison's job program.

For the foregoing reasons, there is no triable issue as to whether Defendants violated Plaintiff's ADA right of access to the prison's job program with respect Plaintiff's request for an adjustable chair and lower table.

3. <u>Retaliation</u>

---

[5] Although Defendants state that Plaintiff was given a lower work-table until he put it in an unsafe place, the Court assumes for the purposes of the summary judgment analysis that Plaintiff's account that he never received a lower work-table is true.

Plaintiff claims that Defendants retaliated against him for requesting accommodations by transferring him to the tool-room position. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct,[6] and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

There is no evidence supporting a conclusion by a reasonable fact-finder that Defendants transferred Plaintiff to his new position because of his request of accommodations. An inmate must show that the protected conduct was the substantial or motivating factor behind the alleged retaliation. *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009). There is no evidence that Defendants were motivated by Plaintiff's request for accommodations; the fact that the transfer occurred after Plaintiff some time after Plaintiff requested accommodations is not enough on its own to establish a retaliatory motive because retaliation is not established simply by showing adverse activity by defendant after protected speech; rather, plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, i.e., "after this, therefore because of this"). There is no evidence of such a nexus. Rather, the only evidence regarding Defendants' reason for the transfer is the undisputed evidence that the new position did not require Plaintiff more than his arthritis allowed, as described above, and that Plaintiff had received a poor performance evaluation in his prior position. These are both legitimate penological reasons, moreover, for the transfer. Consequently, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

## CONCLUSION

The motion for summary judgment is GRANTED. The claims that have been found unexhausted, described above, are DISMISSED without prejudice to refiling in a new action after

---

[6] 28 C.F.R. § 35.134 prohibits retaliation for exercising rights under the ADA.

9

they have been properly exhausted.

The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: December 7, 2022

JEFFREY S. WHITE
United States District Judge